IN THE UNITED STATES DISTRICT COURT

FOR THE DISTRICT OF OREGON

| | |
|---|---|
| **SOLTERRA STRATA LLC,** a Washington limited liability company; and **FARGO APARTMENT LLC,** a Washington limited liability company,<br><br>Plaintiffs,<br><br>v.<br><br>**SEABOLD CONSTRUCTION CO., INC.,** an Oregon corporation, **KEVIN P. OWENS,** and **HAILEY R. OWENS,**<br><br>Defendants. | Case No. 3:24-cv-00151-IM<br><br>**OPINION AND ORDER GRANTING DEFENDANTS' AMENDED MOTION TO DISMISS** |

Ashley J. Sherwood and Meghan A. Douris, Seyfarth Shaw LLP, 999 Third Avenue, Suite 4700, Seattle, WA 98104. Attorneys for Plaintiffs.

William T. Gent and Paul W. Conable, Tonkon Torp LLP, 888 SW Fifth Avenue, Suite 1600, Portland, OR 97204. Attorneys for Defendants.

**IMMERGUT, District Judge.**

Before this Court is Defendants Seabold Construction Co. ("Seabold"), Kevin Owens, and Hailey Owens' Amended Motion to Dismiss, ("Am. Mot."), ECF 13. On January 23, 2024, Plaintiffs Solterra Strata LLC ("Solterra") and Fargo Apartment LLC ("Fargo") filed a

PAGE 1 – OPINION AND ORDER GRANTING DEFENDANTS' AMENDED MOTION TO DISMISS

Complaint related to two construction contracts, the Zeal Contract and the Fargo Contract. Complaint ("Compl."), ECF 1. Plaintiffs assert the following claims against Defendants: (1) Breach of Contract—Zeal Contract; (2) Breach of Contract—Fargo Contract; (3) Unjust Enrichment—Zeal Contract; and (4) Unjust Enrichment—Fargo Contract. *Id.* ¶¶ 45–82. In their claims, Plaintiffs seek to pierce the corporate veil and assert liability against Kevin and Hailey Owens as alter egos of Solterra. *Id.* ¶¶ 53, 62, 72, 83. Plaintiffs also seek punitive damages. *Id.* at 14 (Prayer for Relief).

In their Amended Motion to Dismiss Defendants move: (1) to dismiss Plaintiffs' veil piercing claims against Kevin and Hailey Owens under Federal Rule of Civil Procedure 12(b)(6); (2) to dismiss, or in the alternative to strike, Plaintiffs' request for punitive damages under Rules 12(b)(6) and 12(f)(2); and (3) to dismiss Plaintiffs' claims for Unjust Enrichment under Rule 12(b)(6). Am. Mot., ECF 13 at 2. In response, Plaintiffs noted that during conferral they agreed to withdraw their prayer for punitive damages and their Unjust Enrichment claims. Plaintiffs' Response ("Resp."), ECF 17 at 1–2; *see also* Declaration of Ashley J. Sherwood, ECF 18, Ex. 1.[1] Accordingly, the sole remaining issue before this Court is whether Plaintiffs have stated a claim for piercing the corporate veil. As explained below, Plaintiffs have failed to state a claim to pierce the corporate veil and assert liability against Kevin and Hailey Owens.

---

[1] This Court reminds the Parties that the District's conferral requirement mandates that parties make a "good faith effort . . . to resolve the dispute" before any motion is filed. Local Rule 7-1(a)(1)(A); *see also Wong v. Astrue*, No. C 08-02432 SBA, 2008 WL 4167507, at *2 (N.D. Cal. Sept. 8, 2008) ("The purpose of the [meet and confer] requirement is to encourage settlement, resolve disputes which need not involve the Court, and avoid unnecessary litigation, thus saving the parties', the Court's, and the taxpayers' limited time, money, and resources.").

**LEGAL STANDARDS**

A motion to dismiss for failure to state a claim may be granted only when there is no cognizable legal theory to support the claim or when the complaint lacks sufficient factual allegations to state a facially plausible claim for relief. *Shroyer v. New Cingular Wireless Servs., Inc.*, 622 F.3d 1035, 1041 (9th Cir. 2010). In evaluating the sufficiency of a complaint's factual allegations, the court must accept as true all well-pleaded material facts alleged in the complaint and construe them in the light most favorable to the non-moving party. *See Daniels-Hall v. Nat'l Educ. Ass'n*, 629 F.3d 992, 998 (9th Cir. 2010). To be entitled to a presumption of truth, allegations in a complaint "may not simply recite the elements of a cause of action, but must contain sufficient allegations of underlying facts to give fair notice and to enable the opposing party to defend itself effectively." *Starr v. Baca*, 652 F.3d 1202, 1216 (9th Cir. 2011). The court need not credit the plaintiff's legal conclusions that are couched as factual allegations. *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009).

A complaint must contain sufficient factual allegations to "plausibly suggest an entitlement to relief, such that it is not unfair to require the opposing party to be subjected to the expense of discovery and continued litigation." *Starr*, 652 F.3d at 1216. "A claim has facial plausibility when the plaintiff pleads factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged." *Iqbal*, 556 U.S. at 678 (citing *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 556 (2007)). "The plausibility standard is not akin to a probability requirement, but it asks for more than a sheer possibility that a defendant has acted unlawfully." *Mashiri v. Epsten Grinnell & Howell*, 845 F.3d 984, 988 (9th Cir. 2017) (internal quotation marks omitted) (quoting *Iqbal*, 556 U.S. at 678).

## BACKGROUND[2]

This case is a contract dispute involving two residential construction projects in Portland, Oregon. Plaintiffs are the projects' developers and Defendant Seabold is the general contractor for both projects. Kevin and Hailey Owens are owners and officers of Seabold. Compl., ECF 1 ¶ 4. Mr. Owens serves as the President of Seabold and Ms. Owens serves as the Secretary and Financial Manager. *Id.* As officers of Seabold, Kevin and Hailey Owens controlled the Company's operations and its finances throughout the events described below. *Id.* ¶¶ 10, 20, 40.

In October 2021, Solterra and Seabold executed a contract to build the Zeal Apartments ("Zeal Contract"). *Id.* ¶ 7. Then, in February 2022, Fargo and Seabold executed a contract to build the Fargo Apartments ("Fargo Contract"). *Id.* ¶ 17. Seabold entered into subcontracts to outsource work on those projects to subcontractors and suppliers. *Id.* ¶¶ 8, 18. Under the Zeal and Fargo Contracts, Seabold could only request payments for the work it outsourced if it intended to pay its subcontractors and suppliers. *Id.* ¶¶ 11, 21. The Contracts also required Seabold to pay subcontractors no later than ten days after it received the funds from Solterra. *Id.*

In early November 2023, Seabold sent a "Notice of Termination" letter to Solterra and Fargo, notifying Plaintiffs that Seabold would no longer work on their respective construction projects. *Id.* ¶¶ 13, 23. As of November 21, 2023, Solterra had paid Seabold $20,585,163.87 for work performed on the Zeal Contract and Fargo had paid Seabold $9,791,993.71 for work performed on the Fargo Contract. *Id.* ¶¶ 16, 26. Plaintiffs reviewed these payments and concluded that for the work Seabold had outsourced, the contractor failed to pass on $2.54 million to the appropriate subcontractors and suppliers. *Id.* ¶¶ 33, 36. Instead, Seabold

---

[2] The facts in this Background section are taken from Plaintiffs' Complaint, ECF 1, and are accepted as true when considering Defendants' Motion to Dismiss pursuant to Federal Rule of Civil Procedure 12(b)(6). *See Daniels-Hall*, 629 F.3d at 998.

improperly used those funds to pay other debts unrelated to the construction projects. *Id.* ¶ 42. On December 14, 2023, Seabold notified subcontractors and suppliers that it was closing the business and that the subcontractors should request payments for any outstanding amounts owed from Solterra and Fargo. *Id.* ¶ 29.

On January 23, 2024, Plaintiffs filed their Complaint, asserting several Oregon state common-law claims against Defendants. *Id.* Then, on March 12, 2024, Defendants filed their Amended Motion to Dismiss, ECF 13.

## DISCUSSION

Defendants now move this Court to dismiss Plaintiffs' veil piercing claims against Kevin and Hailey Owens. *Id.* at 7–9. To pierce the corporate veil, Oregon courts require the plaintiff prove three elements: "(1) [t]he shareholder must have controlled the corporation; (2) the shareholder must have engaged in improper conduct in his exercise of control over the corporation; and (3) the shareholder's improper conduct must have caused plaintiff's inability to obtain an adequate remedy from the corporation." *Hambleton Bros. Lumber Co. v. Balkin Enters., Inc.*, 397 F.3d 1217, 1228 (9th Cir. 2005) (quoting *Rice v. Oriental Fireworks Co.*, 75 Or. App. 627, 633 (1985)). "Oregon courts have been extremely reluctant to disregard the corporate form unless exceptional circumstances exist." *Id.* (quoting *City of Salem v. H.S.B.*, 302 Or. 648, 733 P.2d 890, 894 (1987) (en banc)) (internal quotation marks omitted).

Defendants argue that the Complaint fails to allege that the shareholders engaged in "improper conduct." Am. Mot., ECF 13 at 8. Plaintiffs counter that they have pleaded improper conduct by Defendants in two ways. First, they allege that Kevin and Hailey Owens made material misrepresentations to Plaintiffs. Resp., ECF 17 at 7–9. Second, they allege that Kevin and Hailey Owens failed to provide Seabold with sufficient capital to cover its foreseeable

PAGE 5 – OPINION AND ORDER GRANTING DEFENDANTS' AMENDED MOTION TO DISMISS

liabilities. *Id.* However, as explained below, Plaintiffs have failed to plead improper conduct by Kevin and Hailey Owens, and the veil piercing claims should be dismissed.

**A. Plaintiffs Have Pleaded No Material Misrepresentations by Kevin or Hailey Owens**

Plaintiffs claim that Kevin and Hailey Owens engaged in improper conduct when they made several material misrepresentations to Plaintiffs. *Id.* Defendants dispute this and counter that the Complaint does not allege any representation made by Kevin or Hailey Owens. Reply, ECF 19 at 2–4. This Court agrees with Defendants and holds that Plaintiffs have failed to plead improper conduct involving a material misrepresentation.

Shareholders engage in improper conduct when they make misrepresentations to a creditor. *Amfac Foods, Inc. v. Int'l Sys. & Controls Corp.*, 294 Or. 94, 110 (1982) (en banc). A plaintiff need not establish that the misrepresentation is accompanied with fraudulent intent to constitute improper conduct. *Id.* However, Oregon courts define a misrepresentation as "more than mere broken promises, unfulfilled predictions or erroneous conjectures as to future events." *Gibson v. Bankofier*, 275 Or. App. 257, 271 (2015) (citation and internal quotation marks omitted). To establish a misrepresentation, either (1) "the person who makes the statement must have knowledge of its falsity or awareness of lack of knowledge as to its truth or falsity," or (2) "the person who makes the statement negligently supplies false information and owes the listener a special duty of care." *Id.* (citations, internal quotation marks, and brackets omitted).

But nowhere in the Complaint do Plaintiffs allege that Kevin or Hailey Owens made any such statements. Rather, Plaintiffs appear to argue that Kevin and Hailey Owens made such misrepresentations when they failed to comply with the Zeal and Fargo contract terms by allegedly misappropriating $2.54 million, but these allegations do not plead a misrepresentation. Viewing the allegations in the light most favorable to Plaintiffs shows only that Kevin and Hailey Owens promised to use funds they requested from Plaintiffs to pay amounts due to

PAGE 6 – OPINION AND ORDER GRANTING DEFENDANTS' AMENDED MOTION TO DISMISS

subcontractors and suppliers. Kevin and Hailey Owens then allegedly broke that promise when they misappropriated approximately $2.54 million that was due to their subcontractors and suppliers. These broken promises to comply with the Contracts do not qualify as a misrepresentation. *See Gibson*, 275 Or. App. at 270–71 (holding that a defendant's failure to pay a promised amount was not a misrepresentation).

Plaintiffs cite several cases to support its argument, but each are inapplicable because they involved specific false assertions made by the defendants, not mere breaches of contract as alleged here. *See 900 Support, Inc. v. Microportal.com, Inc.*, No. CV 00–1135–HA, 2002 WL 31466441, at *1–2, 7 (D. Or. Jan. 9, 2002) (citing false statements that (1) the defendant entities shared a common account to pay creditors, and (2) senior executives at one defendant entity held leadership positions with other co-defendant entities); *In re Reed*, 646 B.R. 319, 326 (Bankr. D. Or. 2022) (citing false statements that the company's owner had "paid deposits to vendors . . . when [the company] had made no such deposits" and that the owner "falsely stated that [his company] would need to pay restocking fees for canceled orders—orders that did not exist"); *Puamier v. Barge BT 1793*, 395 F. Supp. 1019, 1039 (E.D. Va. 1974) (citing a false statement by the company's president that the company would use an asset to cover expenses incurred by the plaintiff when the company no longer owned the asset). Unlike in these cases, Plaintiffs have failed to allege that Kevin or Hailey Owens made a specific false or misleading assertion. Accordingly, this Court holds that Plaintiffs have not pleaded improper conduct on this basis.

**B.  Plaintiffs Have Not Pleaded that Seabold Was Grossly Undercapitalized When it Was Incorporated**

Next, Plaintiffs argue that Kevin and Hailey Owens committed improper conduct because Seabold was grossly undercapitalized when it entered into the two contracts. Resp., ECF 17 at 9. Defendants respond that Plaintiffs' argument fails because Oregon courts measure capitalization

PAGE 7 – OPINION AND ORDER GRANTING DEFENDANTS' AMENDED MOTION TO DISMISS

when the company was originally incorporated. Reply, ECF 19 at 5–7. This Court agrees with Defendants and holds that Plaintiffs have not alleged improper conduct from Seabold being undercapitalized.

A creditor plaintiff may pierce the corporate veil and pursue claims against a corporation's shareholder when the debtor corporation is grossly undercapitalized. *Amfac Foods, Inc.*, 294 Or. at 109 (explaining that such undercapitalization is deemed to be "improper conduct" on the part of the shareholder). When analyzing whether a corporation was adequately capitalized, Oregon courts have emphasized that "a corporation must have sufficient capital to cover its reasonably anticipated liabilities, measured by the nature and magnitude of its undertaking, the risks attendant to the particular enterprise and normal operating costs associated with its business." *Claus v. Columbia State Bank*, Case No. 3:16-cv-01509-AC, 2019 WL 5624754, at *8 (D. Or. Oct. 30, 2019) (quoting *Klokke Corp. v. Classic Exposition, Inc.*, 139 Or. App. 399, 405 (1996)). However, as noted by Defendants, generally the company must have been undercapitalized when it was originally incorporated to qualify as improper conduct. Reply, ECF 19 at 5; *see Stirling-Wanner v. Pocket Novels, Inc.*, 129 Or. App. 337, 341 (1994).

Although there may be some exceptions to that general rule,[3] Plaintiff has not cited any authority to refute the general rule, nor pointed to any allegations in the Complaint to satisfy the general rule. Seabold was incorporated in 1984. Declaration of Will Gent, ECF 20, Ex. 1.[4] Yet

---

[3] Some jurisdictions have found inadequate capitalization in cases when "the corporation distinctly changes the nature or magnitude of its business" and "when . . . capital transfers to the controlling shareholder, and the withdrawal renders the initial adequacy irrelevant." 1 William M. Fletcher et al., *Fletcher Cyclopedia of the Law of Corporations* § 41.33 (Nov. 2023 update) (footnotes omitted).

[4] This Court takes judicial notice of the Oregon Secretary of State's business entity data for Seabold. A court may look to matters of public record without converting a Rule 12(b)(6) motion into a motion for summary judgment. *Khoja v. Orexigen Therapeutics, Inc.*, 899 F.3d 988, 999 (9th Cir. 2018); *see Gosha v. Bank of N.Y. Mellon Corp.*, 3:16–CV–00073–BR, 2016

PAGE 8 – OPINION AND ORDER GRANTING DEFENDANTS' AMENDED MOTION TO DISMISS

Plaintiffs' allegations concerning Seabold's capitalization all involve the Company's recent financial situation. According to the Complaint, Seabold commenced work on the Zeal project and Fargo project in 2021 and 2022, respectively. Compl., ECF 1 ¶¶ 9, 19. Then, after Seabold terminated the projects in November 2023, Plaintiffs identified that approximately $2.54 million of the funds paid to Seabold for work performed by subcontractors and suppliers had been used to pay unrelated creditors. *Id.* ¶¶ 33, 36. Although these allegations may show that Seabold was undercapitalized in 2023, they do not establish that the Company was undercapitalized when it was incorporated in 1984. Accordingly, Plaintiffs have failed to plead undercapitalization as improper conduct. *See Aero Plan. Int'l, Inc. v. Air Assocs., Inc.*, 94 Or. App. 143, 146 (1988) ("[T]he facts that [a corporation is] now out of business and cannot pay [a] judgment are not a sufficient basis on which to conclude that [it was] undercapitalized."); *see also* 1 William M. Fletcher et al., *Fletcher Cyclopedia of the Law of Corporations* § 41.33 (Nov. 2023 update) ("A corporation that was adequately capitalized when formed but subsequently suffers financial reverses is not undercapitalized.").

\*   \*   \*

Because Plaintiffs have failed to plead improper conduct, this Court dismisses Plaintiffs' veil piercing claims. However, this Court does not find that it is clear that the claim "could not be saved by any amendment." *Harris v. Amgen, Inc.*, 573 F.3d 728, 737 (9th Cir. 2009) (quoting *Lee v. City of Los Angeles*, 250 F.3d 668, 692 (9th Cir. 2001)). Thus, Plaintiffs are given leave to amend their Complaint. *See* Resp., ECF 17 at 10.

---

WL 7238927, at \*4 (D. Or. Dec. 13, 2016) (taking judicial notice of "Business Entity Data" from the Oregon Secretary of State Corporation Division database).

PAGE 9 – OPINION AND ORDER GRANTING DEFENDANTS' AMENDED MOTION TO DISMISS

## CONCLUSION

For the foregoing reasons, this Court GRANTS Defendants' Amended Motion to Dismiss, ECF 13, with leave for Plaintiffs to amend their Complaint. Any amended complaint must be filed within fourteen days.

**IT IS SO ORDERED.**

DATED this 1st day of May, 2024.

/s/ Karin J. Immergut
Karin J. Immergut
United States District Judge